# United States Court of Appeals
## For the First Circuit

No. 08-2435

JUAN GALERA,

Plaintiff, Appellant,

v.

MIKE JOHANNS,
SECRETARY, DEPARTMENT OF AGRICULTURE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Bámily López-Ortiz, with whom López Toro Estudio de Derecho y Notaría, was on brief for appellant.
Lisa E. Bhatia-Gautier, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, were on brief for appellee.

July 14, 2010

**TORRUELLA**, **Circuit Judge**.   Juan R. Galera ("Galera") seeks review of the decision of the U.S. District Court for the District of Puerto Rico granting motions for summary judgment in favor of appellee, the U.S. Secretary of Agriculture.   That decision concerned Galera's claims under the retaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).[1]

Galera appeals the decision on two grounds.   First, he contends that the district court erred in finding that a settlement agreement entered into by the parties barred his claims.   Second, he argues that the district court erred in concluding that he failed to prove that the purported legitimate non-discriminatory reason for the adverse employment action taken against him was pretextual.   After careful consideration, we affirm.

## I. Background

### A. Facts[2]

---

[1]   42 U.S.C. § 2000e-3(a) provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[2]   "The facts are drawn from the parties' statements of material uncontested facts and the exhibits submitted by the parties at the summary judgment stage.   Because this is an appeal from a grant of summary judgment, we recite the facts in the light most favorable

Galera began working in 1995 for the U.S. Department of Agriculture ("USDA"). At that time, he served as the Supervisory Plant Protection and Quarantine Officer (commonly referred to as "Port Director") of Work Unit I (airport operations) of the Plant Protection and Quarantine division ("PPQ") of the Animal and Plant Health Inspection Service ("APHIS"). After an administrative rotation, effective January 21, 2001, Galera became the Port Director for Work Unit II (maritime operations), and Leyinski Wiscovitch-Iglesias ("Wiscovitch"), then-Port Director for Work Unit II, became the Port Director for Work Unit I.

In early 2001, Gary Greene, then the USDA State Plant Health Director ("SPHD") for Puerto Rico and the U.S. Virgin Islands, resigned from his position. Galera applied for the position, but was not selected. As a result, on November 1, 2001, Galera filed a formal Equal Employment Opportunity ("EEO") complaint ("the November 2001 complaint") alleging discrimination based on his Puerto Rican national origin and, because he had filed a formal complaint of discrimination against Greene in 2000,[3] reprisal.

Between Greene's resignation in 2001 and October 2002, the SPHD position was filled temporarily and then was again

to plaintiff-appellant, [Galera]." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 416 n.1 (1st Cir. 2010).

[3] Galera's 2000 complaint of discrimination is not at issue in this case.

-3-

vacated. By October 2002, Wiscovitch had applied for and been promoted to the SPHD position, thus leaving the Port Director position for Work Unit I vacant.

In March 2003, PPQ was reorganized pursuant to the Homeland Security Act such that certain functions, including those of Work Unit II, shifted to the Department of Homeland Security ("DHS"). Consequently, many of the staff employed in this work unit, including Galera, were transferred to DHS. On March 9, 2003, DHS acquired Galera's Port Director position.

A vacancy announcement for the Port Director position for Work Unit I, which had remained vacant since October 2002 due to budget uncertainty, was then posted from May 12 until May 19, 2003. Galera applied for the advertised vacancy.

Wiscovitch, the selecting official, received a slate of seven candidates, including Galera, who were considered the best qualified for the position.[4] Appellee contends that, based on the results of two review panels, Wiscovitch selected another employee for the Port Director position.

On December 11, 2003, Galera contacted an EEO Counselor at the Alternate Dispute Resolution Center ("the Center") of APHIS's Civil Rights Enforcement and Compliance office. According to the EEO Counselor's report, "Galera filed an allegation of

---

[4] The record does not disclose who submitted the slate of candidates to Wiscovitch.

-4-

discrimination based on [r]eprisal," to which the Center assigned an informal case number. Galera alleged that he had previously filed an EEO complaint[5] and that, in 2003, Wiscovitch and Harabin retaliated against Galera by not selecting him for the Work Unit I Port Director position.

On June 28, 2004, Michael A. Lidsky, Resolving Official for USDA, signed a Settlement Agreement ("Agreement")[6] related

---

[5]  According to the EEO Counselor's report, "Galera stated that he previously filed an EEO complaint in March 2003 against [USDA] for being transferred to DHS in which Mr. Harabin was named as the Responding Official."   Other than this report, there is no reference in the record to Galera's March 2003 EEO complaint. Regardless of whether a complaint was filed in November 2001 or March 2003 (or both), the fact that Galera had previously filed at least one EEO complaint is undisputed.

[6]  The Agreement provided, in relevant, part:

> This [Agreement] made by and between [Galera] and [USDA] constitutes a full, complete, and voluntary final settlement and release of any and all alleged employment concerns raised in [Galera's] formal EEO complaint dated November 1, 2001 . . . , as well as in any other grievances, appeals, civil actions, or complaints filed with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") . . . or any other Federal agency, administrative tribunal, or court concerning [Galera's] employment with [USDA] through the date that the last signatory below signs and dates this Agreement (hereinafter "the effective date of this Agreement").  There are no other terms, written or oral, that are not included in the text of this Agreement.

As part of the Agreement, Galera agreed:

> A.   To withdraw, with prejudice, EEO complaint dated November 1, 2001 . . . and any other EEO complaints (formal or informal) brought against [USDA] . . . concerning or arising out of [Galera's] employment with [USDA] arising prior to the effective date of this

-5-

to Galera's 2001 formal complaint of discrimination.  On July 6, 2004, Galera and his counsel signed the Agreement.  Eight days later, a DHS official affixed the last signature, making the Agreement effective.[7]

---

Agreement. . . .  [Galera] further agrees not to raise any new grievances, appeals, civil actions or complaints of any nature with the EEOC . . . or any other Federal agency, administrative tribunal or court regarding any aspect of his employment with [USDA] or any of the issues outlined in his November 1, 2001, EEO complaint arising prior to the effective date of this Agreement;

B.    To release, waive, and withdraw any and all other complaints, grievances, appeals, or civil actions which have been filed with the EEOC . . . or any other Federal agency, administrative tribunal or court against [USDA] . . . for any concerns arising out of Complainant's employment with [USDA] prior to the effective date of this Agreement. This Agreement in no way prevents [Galera] from exercising his rights in accordance with 29 C.F.R. § 1614, in any other matter that arises after the effective date of this Agreement.

C.    To voluntarily waive, release, and forever discharge [USDA], its employees, representatives and agents from any claims, demands, or causes of action which he has, or may have, arising from the identified complaint of discrimination or any other claim or alleged claim of employment discrimination against [USDA] arising prior to the effective date of the Agreement. This release includes, but is not limited to, a release of any right to administrative, judicial, congressional, or any other kind of relief, or of any claim to back pay or other forms of compensation, as to allegations raised in EEO complaint dated November 1, 2001 . . . or any other claim or alleged claim of employment discrimination against [USDA] regarding any aspect of his employment with [USDA] arising prior to the effective date of this Agreement, except as found in this Agreement . . . .

[7]    Given that Galera had been transferred from USDA to DHS, officials representing each agency signed the Agreement, which spanned his employment at both agencies.

## B. Procedural History

On August 11, 2004, Galera filed a formal EEO complaint of discrimination based on retaliation against APHIS with the Employment Complaints Division of USDA's Office of Civil Rights. On December 14, 2004, Galera submitted a letter to the Office of Civil Rights, requesting a final agency decision on the complaint. On March 9, 2006, the Office of Civil Rights issued a "Final Agency Decision" finding that "no relief or corrective action [wa]s warranted or ordered in this matter." The Office of Civil Rights determined that there was "sufficient evidence to establish that [Galera] engaged in protected activity [by filing a discrimination complaint], and that he was subsequently disadvantaged when he was not selected to the Port Director position," but "the activity was not within sufficient proximity to the employment actions challenged in this complaint to support an inference of causation." The Office of Civil Rights also determined that "[e]ven, assuming arguendo, that [Galera] can prove a prima facie case, [APHIS] . . . articulated a legitimate, nondiscriminatory reason for its selection decision." The Office of Civil Rights found "that [Galera] . . . failed to demonstrate that [APHIS's] legitimate, nondiscriminatory reasons were a pretext for discrimination," or that "his qualifications were 'plainly superior' to that of the Selectee."

On June 22, 2006, Galera brought this action in the U.S. District Court for the District of Puerto Rico. On July 19, 2006, he filed an Amended Complaint against USDA alleging "reprisals taken against [him] for engaging in prior [EEO] activity consisting in the filing of a formal complaint of discrimination based on national origin." He claimed that USDA had "engag[ed] in discriminatory employment and recruitment practices at [PPQ] against him in retaliation for having engaged in protected activity," in violation of Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. § 2000e-3(a). Galera sought compensatory damages totaling approximately $300,000, back pay, attorney's fees, and reimbursement of the costs incurred in litigation. He also requested reinstatement to his former position as Port Director of PPQ's Work Unit I or, alternatively, front pay.

On May 30, 2008 and June 13, 2008, Appellee filed two separate motions for summary judgment. In an opinion and order issued on September 10, 2008, the district court, granting both motions, held: (1) that the Agreement barred the instant action because Galera had agreed to waive any complaints presented against USDA prior to the effective date of the Agreement (July 14, 2004); and (2) that Galera failed to establish pretext. Galera subsequently filed this appeal. Because we find that the Agreement covered the time frame of the alleged retaliatory conduct and complied with the relevant regulation, 29 C.F.R. § 1614.603, we

affirm the district court's decision without addressing the merits of Galera's retaliation claim.

## II. Discussion

### A. Standard and Scope of Review

"We review the district court's grant of summary judgment de novo." Foley v. Town of Randolph, 598 F.3d 1, 5 (1st Cir. 2010). Summary judgment is only appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)(2)) (internal quotation marks omitted).

### B. Analysis

Galera contends that the district court erroneously concluded that the Agreement barred his claims of discrimination based on retaliation. He asserts that the Agreement only identifies the formal complaint dated November 1, 2001 and, as a result, the Agreement should not be interpreted as precluding his subsequent claims of retaliation.[8] He also argues that the

_____

[8] Galera also suggested for the first time at oral argument that the Agreement could not preclude his claims of retaliation, for which a formal complaint had not yet been filed by the time the Agreement had been signed, because a Title VII cause of action does not begin to accrue until a formal complaint of discrimination has been filed. The Supreme Court has reaffirmed, however, that "the time for filing a charge of employment discrimination with the [EEOC] begins when the discriminatory act occurs," and that "this rule applies to any discrete act of discrimination, including

-9-

district court, in reaching its conclusion, failed to consider the actions taken by the parties after the Agreement was signed as evidence of their intent, namely, to settle exclusively the November 2001 complaint.[9]  USDA maintains, however, that it is entitled to summary judgment because Galera waived all claims, formal and informal, against USDA prior to July 14, 2004, when the Agreement he signed came into effect.

The district court rejected Galera's arguments, noting that "the conduct plaintiff Galera is complaining [of] in the instant Amended Complaint took place prior to the effective date of the Agreement and should be considered as covered by the same," and thus "the Agreement covered and waived the instant Amended Complaint."  Galera v. Johanns, No. 06-1625, slip op. at 13 (D.P.R. Sept. 10, 2008).  We agree.

---

termination, failure to promote, denial of transfer, and refusal to hire."  Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 621 (2007) (superceded on other grounds by Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5) (citation and internal quotations marks omitted) (emphasis added).  In any case, "because [Galera] raised this argument for the first time at oral argument, we refuse to consider it."  Pleasures of San Patricio, Inc. v. Méndez-Torres, 596 F.3d 1, 7 n.2 (1st Cir. 2010).

[9]  "[C]ourts should refrain from resorting to extrinsic evidence where a contract is utterly unambiguous . . . ."  Southex Exhibitions, Inc. v. R.I. Builder's Ass'n, 279 F.3d 94, 102 (1st Cir. 2002).  Although "the term 'extrinsic evidence' is imprecise," it includes the "post-contract conduct" of the parties.  Nat'l Tax Inst., Inc. v. Topnotch at Stowe Resort & Spa, 388 F.3d 15, 19-20 (1st Cir. 2004).  Because we find that the Agreement here is unambiguous, we need not address this issue in our decision.

We have previously found that "our precedent leaves little room for doubt that [an employee's release of Title VII rights], like a release of other federal statutorily-created rights, must be knowing and voluntary, as evidenced by the totality of the circumstances, and that, if it is, the terms of the release will ordinarily be given their legal effect." Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 274 (1st Cir. 2002) (citation omitted). Galera does not contend that he unknowingly or involuntarily released his claims against USDA, and thus our inquiry is limited to the terms of the Agreement's release.

As per 29 C.F.R. § 1614.603, "[a]ny settlement [of complaints of discrimination] reached shall be in writing and signed by both parties and shall identify the claims resolved." The Agreement here, which was in writing and signed by both parties, provided a general waiver that covered all claims within the applicable time period, thus complying with the regulation. Contrary to Galera's assertions, the Agreement did not limit its scope to the November 2001 complaint. Instead, the Agreement referred to the November 2001 complaint and "any other grievances, appeals, civil actions, or complaints filed with the [EEOC] . . . or any other Federal agency, administrative tribunal, or court concerning [Galera's] employment with [USDA] through [the effective date of this Agreement]." In signing the Agreement, Galera agreed to withdraw the November 2001 complaint and "any other EEO

-11-

complaints (formal or informal) brought against [USDA] . . . arising prior to the effective date."  Galera further agreed "not to raise any new grievances, appeals, civil actions or complaints of any nature with the EEOC . . . or any other Federal agency, administrative tribunal or court regarding any aspect of his employment with [USDA] . . . arising prior to the effective date." General waivers of this nature which are, as here, knowing and voluntary, have previously been found valid.    See, e.g., Rivera-Olmo v. State Ins. Fund Corp., 250 F. App'x 365, 366 (1st Cir. 2007) (finding that an employee waived her right to sue under a federal employment statute where the settlement agreement, entered into knowingly and voluntarily, provided that the employee "releas[ed] and forever discharg[ed] [employer] for any and all claims [arising out of her complaint] without limitation . . . including . . . a release and discharge for any potential and/or actual liability for causes of action [under]" various laws, including a federal employment statute)(quotation marks omitted); Melanson, 281 F.3d at 275 (concluding that a knowing and voluntary release, under which employee "release[d] and discharge[d] forever [employer] from any and all . .. claims, demands, actions, and causes of action . . . arising out of or related in any way to the employee's employment . . .," including under Title VII, was enforceable).

The alleged retaliatory conduct in the instant case extended until November 19, 2003, when Galera was not selected for Work Unit I's Port Director position. Because this conduct occurred prior to the effective date of the Agreement, July 14, 2004, and the Agreement complied with the relevant regulation, we find that Galera's claims are barred.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's judgment.

**<u>Affirmed</u>**.