# United States Court of Appeals
## For the First Circuit

No. 12-1621

CHRISTINE JOHNSON,

Plaintiff, Appellant,

v.

UNIVERSITY OF PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Aníbal Lugo-Miranda, with whom Lugo-Miranda Law Offices was on brief, for appellant.
Diego Ramírez-Bigott, with whom Raquel M. Dulzaides and Jiménez, Graffam & Lausell were on brief, for appellee.

April 18, 2013

**LYNCH, Chief Judge**. In 2009, Christine Johnson, an instructor in graphics, was denied a tenure-track position in the Engineering Department at the University of Puerto Rico's Mayaguez Campus ("UPR"). Three others did receive tenure-track positions: one woman and two men, all of whom had Ph.D.'s, as the position description required. Johnson did not have a Ph.D. and did not accept offers by UPR to pay for her to get one.

Johnson filed administrative discrimination (gender and national origin) charges, followed by a Title VII lawsuit, against UPR. The district court granted summary judgment for the defendant, rejecting Johnson's claims that she was qualified for the tenure-track position, that UPR's reliance on her lack of a Ph.D. was a pretext, and that the real reason for the failure to give her a tenure-track position was discrimination. We affirm, finding that the Ph.D. requirement for tenure-track positions was a legitimate, nondiscriminatory reason for UPR's actions and that Johnson did not meet her burden of showing that the articulated reason was pretextual.

I.

A.      Factual Background

Johnson, a native of New York, received her master's degree in architecture from the University of Buffalo. Johnson moved to Puerto Rico in 1996 and began working at UPR's Mayaguez Campus in January of 1998.

UPR is "an organic system of higher education" composed of institutional units which "function with academic and administrative autonomy" within standards provided by Puerto Rico law and the rules and regulations of the Board of Trustees. P.R. Laws Ann. tit. 18, § 603(a). The Mayaguez Campus is one such institutional unit. Id. § 603(a)(2). Puerto Rico law provides the Chancellor of the Mayaguez Campus with, among other things, the authority to appoint deans for the different schools, directors for different departments, and administrative and academic personnel. Id. § 606(c)(5)-(7).

At UPR's Mayaguez Campus, Johnson served as a graphics instructor[1] in the Department of Engineering for approximately twelve years under temporary service contracts that were formalized every semester.[2] Johnson's federal complaint asserts claims dating back to 2001. In 2001, the Department of Engineering wanted to offer more graphics classes, most of which were taught by

---

[1] UPR's brief refers to Johnson as a professor, and Johnson's brief refers to her as an instructor. To avoid confusion between Johnson's position and tenure-track professor positions, we refer to her as an "instructor."

[2] Temporary service contracts are for a determined period of time and do not grant tenure. To obtain tenure, an individual has to be hired for a probationary tenure-track appointment for a minimum five-year period. After that period expires, the individual can make a request to the Personnel Committee of the Department to be considered for tenure, and the Personnel Committee evaluates the candidate's performance. The Personnel Committee can issue a recommendation to the Chancellor, who can accept the recommendation and award tenure.

instructors with temporary contracts, and was having a difficult time hiring tenure-track graphics professors who possessed Ph.D.'s, as required by departmental guidelines. The Department of Engineering accordingly approved a resolution, on April 26, 2001, requesting permission of the then-Interim Chancellor to hire tenure-track graphics professors who did not have Ph.D.'s. The request was apparently granted.

Three individuals who did not have Ph.D.'s applied for tenure-track probationary appointments, and two -- José Crespo[3] and Joseph Robinson -- were given appointments beginning on July 1, 2001. Johnson did not apply for the position.

Robinson, like Johnson, was born in the United States. He was hired because he was the only one qualified to teach the class Creative Design INGE 3809, and he also possessed an engineering degree. Crespo was hired to teach the class INGE 3011, because out of all those who applied and had taught the class, he had the most experience, since he had taught the class in a full-time capacity for the five previous semesters.

After those two hires, the Department of Engineering did not seek or hire any other individual for a tenure-track position until the 2008-2009 time period.

---

[3] Crespo was Johnson's partner at the time of her deposition in this case and was her partner in 2001. Johnson, by her own admission, was aware that individuals were applying for the position.

In the meantime, on November 10, 2006, UPR's Board of Trustees amended the General Rules and Regulations governing UPR to clarify that to obtain a tenure-track faculty position a candidate needed to have a Ph.D. The Regulations state, in section 42.1.2(a), that:

> As of fiscal year 2006-2007, in order to hold a position of professor or researcher, or to hold a rank in said categories, the person must have, at least, obtained a doctoral degree or equivalent terminal degree in areas that train him or her especially for the subject matters that he or she teaches, researches, or is in charge of.

On April 24, 2008, Dr. Walter Silva-Araya, the then-Director of the Department of Engineering, issued a public announcement for a tenure-track position as an assistant professor teaching graphics in the Department of Engineering. The announcement stated that to be considered for the position the candidate had to have a Ph.D. or M.S. in architecture or mechanical engineering. The M.S. alternative was contrary to UPR's amended 2006 General Regulations and was a mistake. Johnson, who had an M.S. in architecture, sent a letter to Dr. Silva on April 17, 2008, before the public announcement, expressing her interest in a tenure-track position. Four other individuals, along with Johnson, all of whom lacked Ph.D.'s, applied for the position. Of the five candidates, three were women. No position was ever filled based on this announcement.

The Personnel Committee of the Department of Engineering recommended that Johnson be chosen in response to the April 2008 announcement, but the promotion hit a snag when the recommendation was submitted to Chancellor Dr. Juan Vélez Arocho. The Chancellor rejected the recommendation because the public announcement allowed an individual without a Ph.D. to be appointed to a tenure-track position, in violation of the General Regulations. Moreover, Johnson herself did not have a Ph.D. and so was not qualified. Dr. Silva testified that the mistake was an oversight on his part, and the public announcement was cancelled on May 28, 2008.

At this time, Dr. Silva sought alternative options for Johnson, and the Chancellor recommended to Dr. Silva that Johnson be offered a leave of absence to pursue a Ph.D. UPR offered to pay for tuition, books, living expenses, and travel. However, Johnson never accepted UPR's offer.

On June 23, 2008, Dr. Silva issued a new public announcement for the same position, which corrected his earlier mistake. This announcement stated that "[a]pplicants must have a Ph.D[.] in Civil or Mechanical Engineering and demonstrate potential for high-quality research and teaching."

Ten candidates, including Johnson, applied for the position. Of those ten, six had a Ph.D., two were in Ph.D. programs, one (Johnson) had a master's degree, and one had a bachelor's degree. The applications created considerable

discussion on the Personnel Committee because some members wanted to make Johnson an offer. However, in the end, she was ranked fourth of the ten, and the top three, all of whom had a Ph.D., were made offers and accepted. On July 1, 2009, Dr. Aidcer Vidot, Dr. Luis Montejo, and Dr. Carlos Marín were hired. In addition to their Ph.D.'s, all three had teaching experience as professors, instructors, or teaching assistants. Dr. Vidot is a woman, Dr. Montejo is from Colombia, and Dr. Marín is from Spain.

In December 2009, with the addition of three new tenure-track faculty members, UPR no longer needed Johnson's services. As a result, when Johnson's temporary contract expired that month, UPR and Johnson did not formalize a new temporary service contract.

B.      Procedural History

On June 4, 2009, Johnson filed a charge with the Equal Employment Opportunity Commission ("EEOC") against UPR, alleging gender and national origin discrimination. She received notification of her right to sue on November 5, 2009. She never sought to amend the charge. On December 23, 2009, she filed suit in federal district court in Puerto Rico, alleging gender and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., along with other commonwealth law claims not before us on appeal.

UPR moved for summary judgment on April 15, 2011, which the district court granted on March 26, 2012. Johnson v. Univ. of

<u>P.R.</u>, No. 3:09-cv-2276-ADC (D.P.R. Mar. 26, 2012).  The district court ruled that Johnson's claims arising from the failure to give her a tenure-track position in 2001, for which she had not applied, were untimely and no longer actionable because Johnson failed to file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice.  <u>See</u> 42 U.S.C. § 2000e-5(e)(1).  As to the employment actions in 2008 and 2009, the district court found that Johnson had not established a prima facie case because she did not demonstrate that she was qualified for the position and because the candidates chosen were more qualified since they possessed Ph.D.'s.  Finally, the district court concluded that even assuming Johnson established a prima facie case, the Ph.D. requirement was a legitimate, nondiscriminatory reason for UPR's decision not to hire Johnson, and the court explained that Johnson's services were no longer needed once the other candidates were hired.  Johnson did not establish that the articulated reason was a sham to cover up a discriminatory purpose.

II.

A.        <u>Standard of Review</u>

Our review of a district court's grant of summary judgment is de novo.  <u>Galera</u> v. <u>Johanns</u>, 612 F.3d 8, 12 (1st Cir. 2010).  We view the record in the light most favorable to the nonmoving party, <u>id.</u> at 10 n.2, and make all reasonable inferences

in that party's favor, Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008).

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004). We look to the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits in making the determination. Thompson, 522 F.3d at 175. A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Id. (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation mark omitted). A fact is material if it has potential to determine the outcome of the litigation. Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008).

Once a properly supported motion has been presented, where a nonmovant bears the burden of proof on an issue, the nonmovant must point to competent evidence and specific facts to defeat summary judgment. Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). The evidence proffered must be "significantly probative of specific facts," Perez v. Volvo Car Corp., 247 F.3d 303, 317 (1st Cir. 2001), and the "mere existence of a scintilla of evidence" in

support of the nonmovant's position is insufficient, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

B.       <u>Timeliness of Plaintiff's EEOC Charge as to 2001 and 2008 Events</u>

The district court held that all claims about events which occurred more than 300 days prior to Johnson filing the administrative charge with the EEOC on June 4, 2009, including the 2001 decision not to offer her a tenure-track position, were untimely and not actionable.  Johnson argues that the adverse employment actions constituted a continuing violation.  Her argument fails.

Under 42 U.S.C. § 2000e-5(e)(1), a plaintiff must file an administrative charge with the EEOC within 180 or 300 days after the "alleged unlawful employment practice occurred." <u>Frederique-Alexandre</u> v. <u>Dep't of Natural & Envtl. Res. of P.R.</u>, 478 F.3d 433, 437 (1st Cir. 2007).  Puerto Rico is a "deferral" jurisdiction, so the administrative charge must be filed within 300 days of the alleged unlawful conduct.  <u>Id.</u>

The district court correctly held that the allegations involved discrete acts: failure to give Johnson a position for which she did not apply, denials of promotion to a tenure-track position, and nonrenewal of her temporary contract in 2009.[4]  These

_____

[4] She does not, on appeal, explicitly claim that the decision not to renew her contract was independently discriminatory, so such an argument is waived.  In any event, there is no evidence it was and the claim fails with the failure of the tenure-track position

-10-

squarely fit within the Supreme Court's explanation of what discrete acts are.  In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court said they are "acts such as termination, failure to promote, denial of transfer, or refusal to hire."  Id. at 114.  Such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock."  Id. at 113; see Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 188 (1st Cir. 2003).

On appeal, Johnson recharacterizes her claims as hostile work environment claims, see, e.g., Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009) (stating "[t]he classic example of a continuing violation is a hostile work environment"), but such revision is both too late and meritless in any event.  Discrete acts and hostile work environment claims are "different in kind," Morgan, 536 U.S. at 115, because hostile work environment claims by their nature involve repeated conduct and a single act of harassment may not be actionable on its own, id.; see also Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 638 (2007), superseded in part by statute, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5, as recognized in Galera, 612 F.3d at 12 n.8.

_____

claims.

-11-

Only those acts that occurred within the 300 days before June 4, 2009, are actionable (i.e., from August 8, 2008).[5]

C.        Plaintiff's Remaining Title VII Claims Fail on the Merits

Where, as here, there is no direct evidence of discrimination in violation of Title VII, a plaintiff's claim is governed by the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010). Under that scheme, the plaintiff must establish a prima facie case of discrimination, which creates an inference of discrimination. Id.; Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003). If a prima facie case is established,[6] "the burden of production -- but not the burden of persuasion -- shifts to the employer, who must articulate a legitimate, non-discriminatory reason for the adverse employment action." Lockridge, 597 F.3d at 470. If the employer

---

[5] The 2001 "act" was merely the failure to give Johnson a position for which she did not apply, and we doubt that such an "act" could serve as the basis for a discrimination claim.

[6] To establish a prima facie case, a Title VII plaintiff must show that: (1) she is a member of a protected class; (2) her employer took an adverse employment action against her; (3) she was otherwise qualified; and (4) her position remained open or was filled by a person with qualifications similar to hers. García v. Bristol-Myers Squibb Co., 535 F.3d 23, 30 n.2 (1st Cir. 2008); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999). We assume arguendo that Johnson meets the first two requirements. We do not determine the question of whether a native New Yorker, living in Puerto Rico, is considered a member of a protected class for purposes of establishing a prima facie case of national origin discrimination.

-12-

provides such a reason, the plaintiff has to show by a preponderance of the evidence that the employer's proffered reason is pretextual and that the actual reason for the adverse employment action is discriminatory.  Id.; Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994).

Johnson's claims fail because she did not meet UPR's Ph.D. requirement, which was a facially reasonable and legitimate requirement.  Moreover, Johnson has not shown that the reason is pretextual.

1.     Johnson Was Not Qualified Under a Facially Reasonable and Legitimate Requirement

Johnson was not qualified under UPR's requirements for a tenure-track appointment because she did not have a Ph.D.[7]  See Welch v. Mercer Univ., 304 F. App'x 834, 836 (11th Cir. 2008) (plaintiff not qualified where school required an M.D. or Ph.D. for a promotion and plaintiff had neither); see also Jiminez v. Mary Washington Coll., 57 F.3d 369, 382-84 (4th Cir. 1995) (failure to obtain Ph.D. in timely fashion was legitimate ground for termination).  Johnson argues that we must consider other facts that show she was qualified, including her length of time teaching, her reputation as "the best" graphics teacher at UPR, and the fact

---

[7] She did not have qualifications similar to those who filled the positions.  All three individuals hired for the tenure-track positions had doctorates and so were better qualified.  Contrary to Johnson's assertions, their resumes all show they also had teaching experience.

-13-

that she was recommended for a tenure-track position after the first public announcement in 2008.

But UPR's Ph.D. requirement was reasonable on its face and was plainly legitimate.  See Jiminez, 57 F.3d at 384.  Of the three individuals hired under the requirement, one was a woman, and two were of foreign nationalities (one Colombian and one Spaniard).  Moreover, as Dr. Silva testified, requiring professors to have a Ph.D. benefits UPR in a number of ways.  The requirement helps promote the teaching of the most up-to-date scholarship to students, provides prestige to UPR, helps it compete with other universities around the globe, is required for UPR to be a Ph.D.-granting institution, and helps UPR obtain funding since research professors with doctorate degrees "are basically [UPR's] main source of research funding."

Johnson responds that the doctoral degree requirement is motivated purely by economic reasons.  Dr. Silva's testimony establishes otherwise, and the objection is meritless in any event.  "Courts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991).  Further, the defendant's agents were acting under regulations imposed by the Board of Trustees, which Puerto Rico law makes binding.  See P.R. Laws Ann. tit. 18, § 603(a).  The requirement was not discriminatory.

-14-

2.      Johnson Cannot Establish Pretext

In any event, Johnson has not shown by a preponderance of the evidence that the Ph.D. requirement is merely pretextual and the true reason for UPR's actions is discriminatory.  Johnson's argument primarily rests on the ground that UPR could have applied an exception to the requirement.  However, she did not satisfy two parts of the exception.  First, she would not obtain a Ph.D. even when offered a leave of absence and financial assistance.  Second, it was not difficult to recruit for the position.

Section 42.1.5(a) of the General Regulations states that:

> Persons who do not fully meet the academic degree requirements may be recruited as teaching staff as long as they have stood out by their exceptional merits in the field of their speciality, or have a recognized competency in an area of difficult recruitment or skills.

To benefit from the exception, section 42.1.5(a)(2) states that the individual must agree to obtain the required degree in a reasonable period of time.

UPR, on the recommendation of the Chancellor, offered to grant Johnson a leave of absence to pursue a Ph.D. subsidized by UPR, and Johnson never accepted the offer.  Johnson herself admitted that she had been encouraged by UPR to get a doctorate, that UPR offered financial assistance, and that nevertheless she

never pursued a Ph.D.[8]  So, the exception would not have applied to her.

Moreover, Johnson did not show that UPR had a difficult time recruiting individuals for the tenure-track position.  In fact, six of the ten applicants for the second public announcement had Ph.D.'s and two others were completing their Ph.D.'s.

Johnson's other pretext argument is that the deposition testimony by Dr. Wilma Santiago Gabrielini demonstrates that the adverse employment actions were based on the Chancellor's bias against women.[9]  But Dr. Santiago's opinion testimony was based on speculation because she lacked any personal knowledge about the events at issue.  No reasonable jury could find pretext from this testimony.[10]  We add that the Chancellor is the one who recommended that Dr. Silva offer Johnson a leave of absence to pursue a subsidized Ph.D.  Additionally, he had hired women in the past, including Dr. Santiago, and awarded a tenure-track position to a woman in response to the June 2008 announcement.

---

[8] Johnson testified that she had not tried to get a doctorate because "I feel that my experience, along with my professional license and my work history, are adequate and beyond adequate for a tenure track position."

[9] The district court did not consider this deposition because it was not submitted with Johnson's motion opposing summary judgment.  The transcript was filed a month after Johnson filed her opposition, and even if we consider it, the result is the same.

[10] Further, the testimony would also likely have been inadmissible propensity evidence.  See Fed. R. Evid. 404(a).

-16-

III.

The district court's grant of defendant's motion for summary judgment is <u>affirmed</u>.