NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WALTER J. BERIONT,**

*Plaintiff-Appellant,*

**v.**

**GTE LABORATORIES, INC., GTE SERVICE CORPORATION, GTE COMMUNICATIONS CORPORATION, AND ALFRED H. BELLOWS,**

*Defendants-Appellees.*

---

2013-1109

---

Appeal from the United States District Court for the District of Massachusetts in No. 00-CV-11145, Judge Richard G. Stearns.

---

Decided: August 6, 2013

---

WALTER J. BERIONT, of Maynard, Massachusetts, pro se.

ARTHUR G. TELEGEN, Seyfarth Shaw, LLP, of Boston, Massachusetts, for defendants-appellees. Of counsel was WILLIAM L. PRICKETT.

---

Before RADER, *Chief Judge,* LOURIE, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* LOURIE.

O'MALLEY, *Circuit Judge.*

Walter J. Beriont ("Beriont") appeals the decision of the United States District Court for the District of Massachusetts in favor of defendants GTE Laboratories, GTE Service Corporation, and GTE Communications Corporation (collectively "GTE"), and Alfred H. Bellows ("Bellows"). Specifically, the district court held that, pursuant to a settlement agreement between the parties, GTE and Bellows were free of liability for patent infringement or any related cause of action raised against them by Beriont.

On appeal, Beriont challenges the district court's rulings regarding the scope of the settlement agreement and the impact of that agreement on his claims in this action. We *affirm* in part, *vacate* in part, and *remand* for further proceedings.

BACKGROUND

Beriont was hired by GTE as an engineer in June of 1983. *See Beriont v. GTE Labs, Inc.*, No. 1:100-CV-11145-RGS, 2012 WL 2449907, at *1 (D. Mass. June 27, 2012) [hereinafter "*Dist. Ct. Ruling*"]. In February of 1996, he conceived an invention relevant to GTE's business that improved low frequency power distribution within a cable television network. *Id.* That summer, he disclosed this invention to GTE and Bellows, a co-worker. *Id.*

Also in the summer of 1996, another co-worker accused Beriont of stealing laboratory equipment from GTE. *See id.* Because of this accusation, Beriont filed a defamation lawsuit in Massachusetts state court against GTE in September of 1996, which he later amended to include,

among others, a wrongful termination claim after he allegedly was fired for failing to dismiss the suit. *See id.*; *Beriont v. Reichlen*, 60 Mass. App. Ct. 1108, 2003 WL 22992122, at *3 (Mass. App. Ct. Dec. 19, 2003). The Massachusetts Appeals Court eventually ruled for Beriont on the wrongful termination claim, finding it undisputed that GTE fired Beriont for maintaining his defamation suit. *See Beriont v. Reichlen*, 2003 WL 22992122, at *3.

Despite the pending state-court litigation, on June 11, 1997, Beriont and Bellows jointly filed a provisional patent application through GTE's patent counsel. That application was followed by a non-provisional application, U.S. Patent Application No. 09/095,111, filed on June 11, 1998, also through GTE's patent counsel, which ultimately issued as U.S. Patent No. 5,920,802 ("the '802 patent"). The '802 patent is assigned on its face to GTE and lists Beriont and Bellows as co-inventors. *See Dist. Ct. Ruling*, 2012 WL 1449907, at *1; U.S. Patent No. 5,920,802. Following issuance of the '802 patent, Beriont questioned the assignment and joint-inventorship of the patent, and rescinded a power of attorney he had granted to GTE in August of 1998 for the application resulting in the '802 patent.

The assignment and inventorship dispute led Beriont to file the instant federal action on June 13, 2000, seeking: (1) a declaratory judgment that he is the sole inventor of the '802 patent; (2) the removal of Bellows as a co-inventor and GTE as assignee; (3) a judgment that GTE breached a fiduciary duty owed to Beriont; and (4) a judgment of patent infringement against GTE. *See Dist. Ct. Ruling*, 2012 WL 2449907, at *1.

The parties have thus been involved in legal disputes in both state and federal court for well over a decade. In addition to the state-court action described above and this federal action, the parties were involved in a third legal proceeding—a state court declaratory judgment suit brought by GTE against Beriont in November of 1998. This second state-court suit raised claims that relate to

those at issue in the present case, namely, ownership of the then-pending patent application that matured into the patent-in-suit.

Because of the two pending actions in Massachusetts state court, this federal case was stayed in September of 2000. On June 13, 2005, the parties reported to the state court judge that they settled the state-court defamation suit. *Id.* The state judge entered a dismissal *nisi* in the defamation suit on that day, and did the same in GTE's declaratory judgment case two days later. *Id.* The entry of those dismissals was delayed upon the parties' joint motion, however, pending execution of a formal settlement agreement. When the parties failed to submit a formal settlement agreement by the extended dismissal date, the state court judge dismissed both actions on February 6, 2006 based on the oral settlement agreement presented to the court in June 2005. *Id.* The current dispute concerns the effect of that settlement agreement on this federal action.

On July 14, 2011, the district court lifted the stay of this proceeding. *Id.* at *2. Defendants filed motions to dismiss and for summary judgment based on the 2005 state-court agreement, which the district court denied because Beriont disputed the terms of that agreement. *Id.* At a pretrial conference on May 8, 2012, however, the parties did agree on certain terms of that 2005 agreement, specifically that:

> (1) GTE/Verizon would acknowledge in writing that the allegations of theft made against Beriont were false; (2) GTE would pay Beriont $50,000 to permanently settle the defamation claim; (3) ownership of the '802 patent would be joint; and (4) the state court actions would be dismissed and mutual releases from the state court claims would be entered.

*Id.* at *3.

On June 27, 2012, without further motions or briefing, the district court determined that these agreed-to terms obviated the need for trial. The district court entered a declaration that the '802 patent is joint and several property of both Beriont and GTE (and its successor in interest, Verizon Laboratories) from June 13, 2005 onward. *Id.* This declaration of joint-ownership, the district court concluded, "absolves [the parties] of any liability for uses (or non-uses) made of the patent from June 13, 2005, until such time as the patent shall expire." *Id.* It further declared that, prior to June 13, 2005, GTE possessed "at the least" "shop rights" in the '802 patent, which absolved it of "*any* infringement thereof." *Id.* (emphasis added). The court accordingly entered final judgment.

Beriont appeals these rulings. He contends that the 2005 state-court agreement did not effect a dismissal of the federal case or provide for full joint ownership of the '802 patent under 35 U.S.C. § 262. Instead, Beriont asserts that the parties contemplated only "equitable" joint ownership when reaching the state-court agreement. Beriont also maintains that GTE is liable as an infringer for activities prior to June 13, 2005 because the joint ownership agreement was not retroactive and the "shop rights" doctrine does not protect the acts GTE took in that time period.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### DISCUSSION

### I. Standard of Review

This court "reviews the district court's grant or denial of summary judgment under the law of the regional circuit." *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 583 F.3d 832, 839 (Fed. Cir. 2009), *aff'd* 131 S. Ct. 2188 (2011) (citations and internal quotation marks omitted). The First Circuit reviews de novo a district court's grant or denial of summary judgment. *See*

*Johnson v. Univ. of Puerto Rico*, 714 F.3d 48, 52 (1st Cir. 2013). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

## II. Federal Claims

### A. Patent Infringement Liability

The district court resolved Beriont's patent infringement claim by holding that, following June 13, 2005, GTE was absolved from infringement liability by the agreed-to terms of the state-court settlement agreement, under which the parties established GTE's ownership interest in the patent. For the time prior to June 13, 2005, the district court concluded that GTE had "shop rights" in the patent that absolved it of liability. Beriont does not dispute that, at a minimum, he agreed on June 13, 2005 to prospective joint ownership of the patent. While Beriont disputes the details of the joint-ownership agreement, we find that this dispute does not affect the lower court's ruling regarding GTE's post-2005 infringement liability. We agree, accordingly, with the district court that GTE is not liable for patent infringement on or after June 13, 2005. We believe there is an inadequate record to support the lower court's "shop rights" ruling with respect to the period before June 13, 2005, however. Accordingly, we vacate and remand for further consideration of Beriont's infringement claims concerning activities during that earlier time frame.

### 1. Post-June 13, 2005 Activities

Beriont claims that the district court erred in absolving GTE of infringement liability for the period after the 2005 settlement agreement because he did not contemplate that *full* joint ownership (i.e., 50/50) would result from that agreement. *See* Brief of Petitioner-Appellant at 1–3, No. 13-1109 (Fed. Cir. June 27, 2012) ("[E]ach party had a good faith expectation that the joint ownership of the patent would be equitable."). Rather, Beriont believes he is entitled to an interest in the patent, and any reve-

nue generated therefrom, that is greater than that of GTE. *See id.* at 2.

By default:

[i]n the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners.

35 U.S.C. § 262. Beriont concedes that some agreement on joint ownership exists and does not deny that GTE became a joint owner and was free to so act as of June 13, 2005. Specifically, he does not assert that there was an "agreement to the contrary" regarding GTE's right to practice the patent under § 262. He asserts only that there was an agreement to share the benefits of ownership in a disproportionate manner.

If Beriont is correct, he, at most, would have a state law contract claim for a possible percentage of any profits received by GTE when practicing the patent. He would not, however, retain any right to charge GTE with infringement. Accordingly, we agree with the district court that Beriont's admission that the settlement agreement made GTE a joint owner of the patent after June 13, 2005, fully resolves Beriont's infringement claims for that time frame and that judgment on those claims in favor of GTE was appropriate.

## 2. Pre-June 13, 2005 Activities

But the district court's holding regarding GTE's potential liability prior to the agreement gives us pause. The "shop rights" doctrine is a judicially created defense to patent infringement (sometimes described as an implied license). It applies when an employer is sued for patent infringement by an employee who created the patented invention with the employer's resources while

under its employment, even though the employer otherwise has no legal rights to the resultant invention. *See* 8 Chisum on Patents § 22.03[3]. The doctrine has its limits, however; for example, it seems an employer can only use the invention internally in its own business. *Id.* And the law regarding the doctrine's scope is far from clear. *Id.* ("Resolution of a number of issues concerning the scope and content of the shop right is rendered difficult because of uncertainty as to the doctrinal basis of the right."). It is, at least, likely (if not certain) that the doctrine does not extend to an employer's sale of the patented invention to an unrelated third-party for the latter's unfettered use, since the "shop right" belongs only to the employer. *See United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 188–89 (1933) ("Since the servant uses his master's time, facilities and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances *in his business*. But the employer in such a case has no equity to demand a conveyance of the invention, which is the original conception of the employee alone, in which the employer had no part. This remains the property of him who conceived it, together with the right conferred by the patent, *to exclude all others than the employer from the accruing benefits*.") (emphasis added).

With no explanation, the district court declared GTE "not liable for any infringement" of the '802 patent prior to June 13, 2005 because it had "at the least" "shop rights" in the invention during this time period. *Dist. Ct. Ruling*, 2012 WL 2449907, at *3. But, in his complaint, Beriont alleged that "GTE Labs has manufactured, sold, continues to sell or offers to sell the invention described in U.S. Patent #05,920,802 for good and valuable consideration." Complaint at ¶ 16, *Beriont v. GTE Labs., Inc.*, 2012 WL 2449907 (D. Mass. June 13, 2000) (No. 00-CV-11145). This allegation, which seemingly has gone undisputed, may implicate activity by GTE that is outside the scope of

its shop rights—i.e., use of the patented invention by GTE outside its own business.

The district court's reliance on *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576 (Fed. Cir. 1993), gives us further pause. In *McElmurry*, Arkansas Power & Light ("AP&L") used the invention in question only in its own facilities, even though a third-party contractor, upon receipt of the design and specifications for the invention from AP&L, had manufactured and installed the invention. *See id.* at 1583. We concluded it was no act of infringement for AP&L to hire the unrelated third party to perform these activities because "AP&L's 'shop right' was not limited to AP&L's use of [invention] that AP&L itself had manufactured and installed. Quite to the contrary, [we held] that AP&L's 'shop right' entitled it to procure the [invention] from outside contractors." *Id.* at 1583–84. But the district court never addressed the differences between the circumstances in *McElmurry* (i.e., hiring a third party to use the invention in-house) and the alleged conduct here (i.e., the actual sale without restriction to a third party). The latter scenario appears to be outside the scope of the "shop rights" doctrine.

Notably, the district court received no briefing and heard no arguments from the parties regarding the "shop rights" doctrine or its applicability to this case. *See* Brief of Respondent-Appellee at 7 n.2, No. 13-1109 (Fed. Cir. Mar. 25, 2013). The lower court also failed to make pertinent factual findings regarding the extent of GTE's use of the patented invention, or legal conclusions regarding the limits of the "shop rights" doctrine. Lacking the necessary findings regarding the alleged infringing sales, we cannot properly review the district court's judgment, and a remand for further development of the record is necessary. *See* FED. R. CIV. P. 52(a)(1) ("In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately."); *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991) ("Sufficient factual findings on the mate-

rial issues are necessary to allow this court to have a basis for meaningful review.").

Accordingly, we vacate the judgment of non-infringement for the period before June 13, 2005 and remand for further proceedings in accordance with this opinion.

We note, however, that there may be alternative grounds to support the lower court's non-infringement finding for the pre-June 13, 2005 period. First, GTE contends that the joint ownership agreement covered the entire life of the patent and all uses of the patented invention. The trial court made no findings on this issue, relying instead on the "shop rights" doctrine to absolve GTE of infringement liability for the time frame predating the settlement agreement. While the scope of the settlement agreement is a question governed by state law, it is one the district court would be authorized to answer in the context of deciding the infringement claim, or by virtue of Beriont's assertion of a state law contract claim asking for an interpretation of the settlement agreement.[1]

Second, assuming the joint ownership agreement was prospective only, our review of the record revealed a June 13, 1983 document entitled "Assignment Agreement." R. App. at A105, *Beriont v. GTE Labs, Inc.*, No. 13-1109 (Mar. 18, 2013) [hereinafter "Assignment Agreement"]. It appears that, more than fifteen years before the filing of the application resulting in the '802 patent, Beriont executed the Assignment Agreement whereby he agreed

---

[1] Neither party contends that the state court retained exclusive jurisdiction over the interpretation or enforcement of the settlement agreement, so we assume there is no such order which might impact the federal court's exercise of supplemental jurisdiction over the state law claim Beriont has asserted with respect to that agreement.

to "assign and convey to the [GTE Products] Corporation [his] entire right, title, and interest in and to all . . . ideas, concepts, inventions, processes, and improvements and all patent applications and patents thereon." *Id.*; *see Dist. Ct. Ruling*, 2012 WL 2449907 at *3. The Assignment Agreement goes on to state that Beriont "understand[s] the expression 'Corporation' as used in this agreement includes not only GTE Products Corporation but also its successors or any company controlled by it." R. App. at A105.

If the Assignment Agreement is a valid present assignment of future rights in all patents relating to inventions made or conceived by Beriont while in GTE's employ, then ownership of the '802 patent pre-June 15, 2005 might well rest exclusively with GTE. Neither party disputes that the invention claimed in the '802 patent was conceived, at least in part, by Beriont, while employed by GTE or that it is within GTE's line of business. As such, at all times during the alleged infringement, Beriont's interest in the '802 patent may have been legally assigned to GTE. *See Filmtec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) ("[I]t is settled law that between the time of an invention and the issuance of a patent, rights in an invention may be assigned and legal title to the ensuing patent will pass to the assignee upon grant of the patent." (citing *Gayler v. Wilder*, 51 U.S. (10 How.) 477, 493 (1850))).

Curiously, neither party addressed this document in its briefing before this court (even though it was a crucial part of GTE's declaratory judgment action in state court), nor did either party do so below. This assignment could also provide an alternate basis for the district court's judgment of non-infringement for the time period prior to the state-court settlement. It is conceivable that, until that agreement, Beriont effectively had no ownership interest in the patent. Thus, if the settlement agreement is not retroactive, that fact may inure to GTE's benefit, not Beriont's.

Finally, on inspection of the U.S. Patent and Trademark Office's ("USPTO") Patent Assignment Abstract of Title database, we found an assignment by Beriont recorded on February 25, 2002, as executed on January 23, 2002. USPTO Assignment Abstract of Title Database Reel/Frame No. 012641/0723. This document was entered onto the docket pursuant to a "judgment regarding assignment." Neither party discusses this document before us, nor did either party do so below.

On remand, we suggest that the district court consider all of these questions and their effect on Beriont's infringement claim for GTE's actions prior to June 13, 2005.[2]

_____

[2]    The dissent disagrees with our decision to remand the case, not because the lower court's explanation for its judgment is defensible, but because it believes an alternative ground "apparently" exists to justify that judgment— i.e., the existence of the Assignment Agreement between GTE and Beriont. *Dissenting Op.* at 2. Respectfully, it is not apparent that GTE "had ownership of the patent and was free to engage in all activities within the scope of the patent (pre-2005), free from any claims of infringement by Beriont (or, as far as we know, anyone else)." *Id.* We have no idea whether the Assignment Agreement is valid. Indeed, there is nothing in the record that even indicates the agreement remained operative as of 2005. The fact that neither party nor the district court raised or assessed the Assignment Agreement indicates that it may well *not* be case-dispositive. In any event, patent ownership is a mixed question of law and fact. *See Kahn v. Gen. Motors Corp.*, 77 F.3d 457, 459 (Fed. Cir. 1996) ("The ownership of patent property is a matter of law, the decision of which may entail underlying factual inquiries."). And no factual findings regarding the Assignment Agreement were made below.

### B.  Inventorship and Correction
### of Registration Claims

Beriont brings claims to correct the inventorship of the patent and to correct the patent's registration.  He contends he is the sole inventor and seeks removal of the listed co-inventor, Bellows.  The district court never addressed these claims in its June 27, 2012 ruling.  It declared the rights of Beriont and GTE (ruling that the patent is joint and several property of these parties, GTE will pay Beriont $50,000, GTE will provide a written acknowledgement that its defamatory statements were false, and GTE had "shop rights" in the patent).  Based on these declarations, the district court ordered the case to be closed.  But it is unclear how the declared rights resolved the inventorship and correction of registration claims.  Ownership and inventorship are distinct concepts.  Accordingly, on remand, the district court should rule on these claims in the first instance and make the necessary factual and legal findings.

---

The Assignment Agreement potentially forms the basis for a defense for GTE, on which GTE, not Beriont, caries the burden.  If the Assignment Agreement's impact on the continuing vitality of Beriont's claims was as clear as the dissent is willing to unqualifiedly assume, GTE likely would have argued as much.  Depriving Beriont of an opportunity to respond to a defense that was never raised is especially problematic given his *pro se* status, since frequently we provide more lenient treatment to *pro se* litigants.  *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) ("Where, as here, a party appeared *pro se* before the trial court, the reviewing court may grant the *pro se* litigant leeway on procedural matters, such as pleading requirements.").

## II.  State Law Claims

Beriont also brought several state-law claims in this action, specifically for: (1) breach of fiduciary duty, (2) correction of the registration of the patent to reflect he never assigned it to GTE, and (3) correction of the joint-ownership arrangement.  *See Dist. Ct. Ruling*, 2012 WL 2449907, at *1.  The first claim is a matter of state law, and the issues of patent ownership and assignment are, likewise, state law matters.  *See Enovys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010) ("Who has legal title to a patent is a question of state law."); *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009) (holding that "questions of patent owner-ship are determined by state law"); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997) ("[A]n action to rescind or cancel an assignment is a state-law based claim, absent diversity jurisdiction it is to a state court that plaintiffs must look in seeking a forfeiture of the license.") (internal citation omitted).

To the extent these state law claim implicate the scope and terms of the 2005 settlement agreement, more-over, that is also a matter of state law.  *See S & T Mfg. Co. v. Cnty. of Hillsborough*, 815 F.2d 676, 678 (Fed. Cir. 1987) ("Questions regarding settlements are governed by state law applicable to contracts in general.").

After declaring the rights described above, the lower court ordered closure of the case with no explicit resolu-tion of these claims.  We accordingly refuse to take them up on appeal and remand them back to the lower court along with the federal claims.

On remand, it is within the district court's discretion to exercise supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367, or to decline supplemental jurisdiction if it first dismisses all claims over which it has original jurisdiction.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of

discretion, not of plaintiff's right."). We take no position on how the trial court should exercise its discretion in these circumstances.

## CONCLUSION

Because the district court failed to make sufficient factual and legal findings on the issue of "shop rights," its ruling regarding GTE's infringement liability for actions taken prior to June 13, 2005 is vacated. Because the district court made no explicit findings with regard to Beriont's fiduciary duty, inventorship, or patent correction claims, its rulings with regard to these claims are vacated as well. Finding no legal error in the district court's determination that GTE is not liable for infringement for actions it took after June 13, 2005, we affirm that portion of the judgment. The matter is remanded for further proceedings in accordance with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**WALTER J. BERIONT,**
*Plaintiff-Appellant,*

**v.**

**GTE LABORATORIES, INC., GTE SERVICE CORPORATION, GTE COMMUNICATIONS CORPORATION, AND ALFRED H. BELLOWS,**
*Defendants-Appellees.*

_____

2013-1109

_____

Appeal from the United States District Court for the District of Massachusetts in No. 00-CV-11145, Judge Richard G. Stearns.

_____

LOURIE, *Circuit Judge*, concurring in part and dissenting in part.

I concur in the majority's decision to affirm the district court's decision that GTE Laboratories, GTE Service Corporation, and GTE Communications Corporation (collectively "GTE") are not liable for post-2005 infringement. Respectfully, I dissent from its conclusion that the case needs to be remanded for further consideration of Beriont's claim concerning the effect of possible shop rights on pre-2005 activity.

Beriont was an engineer employed by GTE. U.S. Patent 5,920,802 ("the '802 patent") issued on July 6, 1999, in the name of Beriont and Bellows as co-inventors and was assigned "on its face" to GTE. '802 patent, at [73]. It is not surprising that an employed engineer assigned his invention to his employer. Not only was the patent assigned on its face to GTE, but the majority opinion notes that that recitation was both supported by a general assignment agreement in the record and verified by a judgment regarding assignment against Beriont, effective January 23, 2002, and recorded in the Patent Office on February 25, 2002. *See Majority Op.* at 10–12 (citing R.A. 105 and USPTO Assignment Abstract of Title Database Reel/Frame No. 012641/0723). Thus, GTE apparently had ownership of the patent and was free to engage in all activities within the scope of the patent (pre-2005), free from any claims of infringement by Beriont (or, as far as we know, anyone else).

Beriont and GTE later entered into a dispute concerning the assignment and joint inventorship of the patent. That dispute was settled in 2005 by, *inter alia*, an agreement that ownership of the patent would be joint, at least as between Beriont and GTE. It is well settled that a co-owner of a patent need not account to other co-owners and is free to practice the co-owned patent without liability to any other co-owner. 35 U.S.C. § 262; *see Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997). The fact that GTE now only co-owned the patent, rather than having full ownership, should not have affected its right to be free of claims of liability both pre- and post-2005. If there was a concern over that point on the part of Beriont, that would have been a matter to be settled in the agreement, and it was apparently not.

Because GTE is free to practice the patent pre-2005 as well as post-2005, I see no reason to remand for further exploration of the shop rights issue. GTE owned the patent, so it did not need to rely on shop rights.

The majority opinion states "[c]uriously, neither party addressed this document [the general assignment] in its briefing before this court (even though it was a crucial part of GTE's declaratory judgment action in state court), nor did either party do so below." *Majority Op.* at 11. In any event, in my view, the decision on appeal can be affirmed without remand. *See Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 (Fed. Cir. 1985) ("This court reviews judgments, not opinions."); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983) ("We sit to review judgments, not opinions.").

According, I respectfully dissent from the majority's decision to remand the case for further consideration of shop rights.