**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                          )   BAP No.   CC-15-1008-KuFKi
                                )
LAVESTA M. LOCKLIN,             )   Bk. No.   13-24951
                                )
                    Debtor.     )
_____ )
                                )
RELIANCE STEEL & ALUMINUM CO.;  )
STEPHEN G. OPPERWALL,           )
                                )
                    Appellants, )
                                )
v.                              )   **MEMORANDUM**[*]
                                )
LAVESTA M. LOCKLIN,             )
                                )
                    Appellee.   )
_____ )

Argued and Submitted on October 22, 2015
at Los Angeles, California

Filed – December 7, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark D. Houle, Bankruptcy Judge, Presiding

_____

Appearances:   Robert P. Goe of Goe & Forsythe, LLP argued for
               appellee LaVesta M. Locklin.[**]

_____

Before: KURTZ, FARIS and KIRSCHER, Bankruptcy Judges.

_____

     [*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

     [**]Counsel for appellants Reliance Steel & Aluminum Co. and
Stephen G. Opperwall did not appear for oral argument, so
appellants' position was deemed submitted on their appeal briefs
and on the appellate record.

**INTRODUCTION**

Reliance Steel & Aluminum Co. and its counsel Stephen Opperwall appeal from the bankruptcy court's order pursuant to 11 U.S.C. § 362(k)[1] determining that they willfully violated the automatic stay and awarding against them actual damages of $7,033 and punitive damages of $2,500.

Reliance and Opperwall assert that, when they sent letters to the debtor's real estate broker referencing the pending court-approved sale of the debtor's residence and notifying the broker that Reliance held certain judgment liens, they were not trying to interfere with the sale or to control property of Locklin's bankruptcy estate. The bankruptcy found Reliance's and Opperwall's assertions disingenuous, and the record supports that finding.

Reliance and Opperwall further assert that the bankruptcy court should not have awarded the debtor any of her attorney's fees as actual damages given that there was no evidence of any injury (other than the fees) resulting from their conduct. Reliance's and Opperwall's assertion regarding the fee award is inconsistent with the plain language of § 362(k) and with binding Ninth Circuit authority.

Accordingly, we AFFIRM the bankruptcy court's stay violation order.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

**FACTS**

For many years, LaVesta Locklin's husband Bill operated Nightscaping, Inc. and Loran, Inc., which were in the business of designing, manufacturing and selling landscape lighting products. Bill was the sole owner of Nightscaping and Loran until his death in December 2007, at which point Locklin became the sole owner. Thereafter, the businesses took a serious turn for the worse. Notwithstanding Locklin's attempts to right the businesses by investing significant amounts of capital and by hiring a professional senior management team, her efforts did not save the businesses, which ceased operations in September 2013.

Reliance's relationship with Nightscaping and Loran dates back to at least 2006. At that time, Reliance agreed to sell to Nightscaping and Loran, on credit, materials the businesses needed for their manufacturing processes. Nightscaping's and Loran's business records reflect that, between 2006 and 2012, they fully paid 94 of 95 Reliance invoices. According to those records, Reliance's last invoice in the approximate amount of $9,500 was only partially paid. The unpaid balance of roughly $8,000 has spawned a great deal of expensive litigation between the parties.

In September 2013, one week after Locklin commenced her personal chapter 11 case, Reliance sued Nightscaping, Loran and Locklin in the Los Angeles County Superior Court. Locklin presumably did not list Reliance as one of her creditors because, in her view, Reliance was a trade creditor of the businesses and was not one of her personal creditors. Reliance saw it differently. Reliance's state court complaint alleged that

3

Locklin was liable to Reliance as Nightscaping's and Loran's alter ego. Reliance learned of Locklin's bankruptcy case by no later than the beginning of February 2014, when it filed a proof of claim in Locklin's bankruptcy case. Eventually, in March 2014, Reliance dismissed Locklin from the state court lawsuit, without prejudice. But Reliance obtained a default judgment against Nightscaping and Loran on July 30, 2014.

After hotly contested claim litigation spanning several months, the bankruptcy court disallowed Reliance's claim against Locklin because Reliance never substantiated its alter ego allegations against Locklin.[2]

In July 2014, shortly before the bankruptcy court's claim disallowance ruling, the bankruptcy court granted Locklin's motion to sell her personal residence on Walnut Street in Redlands, California. Copies of both the notice of the sale motion and the sale order were served on Opperwall. In relevant part, these documents identified Blesch & Associates Real Estate as Locklin's real estate broker and provided for Locklin's bankruptcy counsel, after sale closing, to hold the net sale proceeds pending further order of court.

On August 29, 2014, the same day the bankruptcy court entered its claim disallowance order, Opperwall served by mail on

---

[2]The bankruptcy court's claim disallowance order is the subject of a separate appeal (BAP No.CC-14-1446). In that appeal, we are vacating the claim disallowance order and remanding for further proceedings. Even so, in and around September 2014, at the time Reliance and Opperwall engaged in the conduct that led to the stay violation proceedings, the bankruptcy court had just disallowed Reliance's proof of claim against Locklin.

4

Jane Blesch of Blesch & Associates a two-page Notice of Judgment lien. The first page of the Notice of Judgment Lien identified Nightscaping as the judgment debtor, and the second page identified Loran as an additional judgment debtor. The Notice of Judgment lien did not identify Locklin as a judgment debtor, but the proof of service attached to the Notice of Judgment lien contained the following information at the very top of the page:

<u>PROOF OF SERVICE BY MAIL</u>
**(Reliance Steel & Aluminum Co. dba MetalCenter v. Nightscaping, Inc.; Loran, Inc.; LaVesta Locklin)**
(Los Angeles County Superior Court Case Number 13K12928)

Notice of Judgment Lien (Aug. 29, 2014) (emphasis in original).

When Opperwall served the Notice of Judgment Lien on Blesch, he did not explain why he had served it on her or what information, right or demand he was attempting to communicate to Blesch. Apparently not satisfied that he had fully conveyed whatever he was attempting to convey to Blesch, on September 9, 2014, Opperwall emailed to Jerritt Watts of Blesch & Associates a cover letter and several enclosures related to Reliance's state court litigation against Nightscaping, Loran and Locklin.[3] In the cover letter, the first thing Opperwall told Watts was: "I represent Reliance Steel & Aluminum Co. in the above referenced case against Defendants Nightscaping, Inc.; Loran, Inc.; LaVesta Locklin; and DOES 1-50." Letter (Sept. 9, 2014). Notably, by using the present tense and by including Locklin in his list of defendants, Opperwall effectively advised Watts that his

---

[3]In addition to emailing the letter and enclosures to Watts, Opperwall also mailed the letter and enclosures.

5

representation of Reliance against Locklin in the state court litigation was ongoing.

Opperwall did not advise Watts that Reliance had dismissed Locklin from the state court litigation in March 2014. Nor did Opperwall identify the specific purpose or relevance of his cover letter and the enclosures; however, immediately after identifying himself as counsel for Reliance, Opperwall stated in the cover letter: "I am informed that you have an escrow open for the sale of real property regarding the bankruptcy of Lavesta Locklin." The four documents Opperwall enclosed with the cover letter were copies of the following: (1) Reliance's complaint against Nightscaping, Loran and Locklin; (2) Reliance's Abstract of Judgment against Nightscaping and Loran; (3) Reliance's Default Judgment against Nightscaping and Loran; and (4) Reliance's Notice of Judgment lien against Nightscaping and Loran.

Roughly two weeks after Opperwall corresponded with Watts, Locklin filed her motion seeking a determination that Reliance and Opperwall had willfully violated the automatic stay. In the motion, Locklin requested an injunction prohibiting Opperwall from all further attempts to collect upon Reliance's disallowed claim against Locklin and her property. Locklin further reserved the right to prove up her entitlement to recover actual damages and punitive damages under § 362(k). At the time Locklin filed her stay violation motion, the sale of Locklin's residence was still pending. At some point thereafter, the sale fell through, and the escrow was cancelled.

In opposition to the motion, Reliance and Opperwall denied that they had violated the automatic stay (willfully or

otherwise) by sending the letters. They contended that they had not been attempting to assert a claim or interest against property of the estate or to interfere with the sale of estate property. According to Opperwall's supporting declaration, he had sent the letters to Blesch and Watts just in case it turned out that Nightscaping or Loran held some right to a portion of the proceeds from the sale of Locklin's residence. But Reliance and Opperwall never identified what that interest might be, nor did they ever come forward with any evidence (or even factual allegations) to support their theory that Nightscaping or Loran might have held an interest in the residence or its proceeds.

In fact, Locklin's bankruptcy schedules and her motion to sell the residence both identified the residence as property of Locklin's bankruptcy estate. Tellingly, while the sale motion proceedings were taking place in the bankruptcy court, neither Reliance nor Opperwall made any attempt to assert that either Nightscaping or Loran had a legally cognizable interest in the residence or its proceeds.

On October 21, 2014, the bankruptcy court held its initial hearing on Locklin's stay violation motion. The court was not persuaded by the stated purpose offered by Reliance and Opperwall for their conduct. The court instead found that their actions in sending the letters to Blesch and Watts were attempts to exercise control over property of the estate, to enforce a lien against property of the estate, and to collect on a (disallowed) pre-petition claim. The court further found that Reliance's and Opperwall's actions constituted willful stay violations within the meaning of § 362(k) and that the matter should be continued

7

to enable the parties to fully address the damages issue.

After the submission of evidence regarding damages, further briefing and two additional hearings, the bankruptcy court awarded Locklin as actual damages only a fraction of the fees she requested. Locklin requested over $16,000 in fees, but the bankruptcy court limited the actual damages award to $7,033 based on the following reasoning and findings:

> [G]iven the multiple violations of the stay and the circumstances of the case, the Court is inclined to find that Debtor's actual damages here include fees incurred by counsel in filing the Motion for Violation of the Stay, but which the Court will reduce taking into account (1) somewhat excessive amounts billed for drafting the Motion, (2) the fact that Debtor did not attempt to communicate with Reliance prior to filing the Motion, and (3) the fact that the arguable effected sale of the Walnut Property fell through by no fault of the Correspondence. Here, the Court will allow amounts of $2,033 for fees incurred for correspondence with the broker, analyzing the Correspondence from Reliance and research regarding a possible stay violation. The Court will allow a further $5,000 for fees incurred in connection with the Motion, reduced as discussed above from the total balance requested on reasonableness grounds given the circumstances of the case, for a total fee award of $7,033.

Tent. Ruling attached to and incorporated into bankruptcy court's stay violation order (Dec. 30, 2014).

In support of its punitive damages award, the bankruptcy court in essence found that, given the timing and nature of Opperwall's letters, Reliance and Opperwall intentionally sought to interfere with Locklin's court-authorized sale of her residence and to exercise control over her residence and the anticipated sale proceeds in reckless disregard of Locklin's rights as a debtor in possession and notwithstanding the bankruptcy court's prior determination that Reliance did not have an allowable claim against Locklin. Based on these findings, the

8

bankruptcy court awarded Locklin $2,500 in punitive damages.

The bankruptcy court entered its stay violation order on December 30, 2014, and Reliance and Opperwall timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court err when it determined that Reliance and Opperwall violated the automatic stay?

2. Did the bankruptcy court err when it determined that Locklin's reasonably-incurred attorney's fees were recoverable as actual damages within the meaning of § 362(k)?

**STANDARDS OF REVIEW**

The scope of the automatic stay, and the actions enjoined by it, are questions of law we review de novo. Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1213 (9th Cir. 2002). But the determination of what actions Reliance and Opperwall took, the underlying purpose of those actions, and whether their stay violations were willful are questions of fact reviewed under the clearly erroneous standard. Id.

The amount of damages awarded is reviewed for an abuse of discretion. Id. The bankruptcy court abused its discretion if it incorrectly construed or applied a legal rule or its factual findings were illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

9

**DISCUSSION**

The automatic stay is an essential component of the Bankruptcy Code. See America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095, 1100 (9th Cir. 2015) (en banc). It gives the debtor respite from creditor activity and maintains the status quo among the creditors in order to forestall a creditor race to the courthouse and to facilitate an orderly and equitable distribution of the estate's assets. See id.; Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n, 997 F.2d 581, 585-86 (9th Cir. 1993).

In order to preserve and promote the efficacy of the automatic stay, it is liberally construed and strenuously enforced. See, e.g., In re Schwartz-Tallard, 803 F.3d at 1100; Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). Apparently dissatisfied with the debtor remedies formerly available against stay violators, Congress amended the Bankruptcy Code in 1984 to add § 362(h), which was re-designated as § 362(k) in 2005. See In re Schwartz-Tallard, 803 F.3d at 1098; see also In re Kutumian, 2014 WL 2024789, at *10 (Bankr. E.D. Cal. 2014) (discussing legislative history). Section 362(k)(1) provides in relevant part: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

A stay violation is willful if the alleged violator knew of the automatic stay and if his or her actions were intentional. Leetien, 309 F.3d at 1215. In turn, the alleged violator is

10

charged with knowledge of the automatic stay if he or she knew of the debtor's bankruptcy case. <u>Knupfer v. Lindblade (In re Dyer)</u>, 322 F.3d 1178, 1191 (9th Cir. 2003); <u>see also</u> <u>Ozenne v. Bendon (In re Ozenne)</u>, 337 B.R. 214, 220 (9th Cir. BAP 2006) ("Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay."). There is no dispute here that Reliance and Opperwall knew about Locklin's bankruptcy case and acted intentionally when they sent the letters to Blesch and Watts.

Until recently, in order to recover attorney's fees, Locklin would have needed to prove that Reliance's and Opperwall's conduct qualified as **ongoing** stay violations – that the attorney's fees were incurred to end the stay violations or to nullify their effect. <u>See</u> <u>Sternberg v. Johnston</u>, 595 F.3d 937, 947 (9th Cir. 2010). However, an en banc panel of the Ninth Circuit Court of Appeals has overruled <u>Sternberg</u>. <u>In re Schwartz-Tallard</u>, 803 F.3d at 1097. <u>In re Schwartz-Tallard</u> held that all reasonable attorney's fees that an individual debtor incurs in enforcing the stay – including the fees incurred in prosecuting a damages action for violation of the stay – are recoverable as actual damages under § 362(k)(1). <u>Id.</u> at 1101. Thus, in light of <u>In re Schwartz-Tallard</u>, bankruptcy courts no longer need to distinguish between those fees incurred to end the stay violation and those fees incurred to recover damages. <u>Id.</u> Simply put, under <u>In re Schwartz-Tallard</u>, all of these fees qualify as actual damages for purposes of § 362(k)(1). <u>Id.</u>

Reliance and Opperwall only make two arguments on appeal, and neither argument has any merit. First, they argue that the bankruptcy court erred when it found that their letters amounted

11

to acts taken to interfere with Locklin's sale of her residence and to exercise control over estate property and, hence, constituted stay violations. The bankruptcy court's finding regarding the underlying purpose of the letters qualifies as a reasonable inference drawn from the evidence in the record. While the bankruptcy court alternately could have arrived at a different inference, we cannot say that this inference was clearly erroneous. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."); see also Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (holding that bankruptcy court's findings of fact are clearly erroneous only if they are "illogical, implausible, or without support in the record.").

Second, Reliance and Opperwall argue that the bankruptcy court should not have awarded any attorney's fees to Locklin because Locklin did not suffer any actual damages as a result of their stay violations. This argument incorrectly assumes that Locklin's attorney's fees do not qualify as actual damages and that attorney's fees are recoverable under § 362(k) only if the debtor suffered another form of injury as a result of the stay violations. Neither of these assumptions can be reconciled with the plain language of § 362(k) or with In re Schwartz-Tallard.

At another level, Reliance's and Opperwall's second argument challenges the notion that their willful stay violations (sending the letters) were significant enough to justify the need for any action on the part of Locklin. They contend that their stay violations were not subject to "re-occurrence" and that their

12

conduct was "discrete and complete" once they finished sending the letters. In essence, they are arguing that none of the fees Locklin incurred were reasonable because their own conduct was so minimal and legally ineffectual in relation to Locklin and her estate property that no response was reasonably necessary.

The bankruptcy court disagreed, and so do we. The record indicates that at least some of the attorney's fees arose from Locklin's counsel's need to communicate with the real estate broker regarding the significance of the letters. In re Schwartz-Tallard explicitly held that attorney's fees incurred outside of a court proceeding to address a willful stay violation are recoverable as actual damages under § 362(k)(1). In re Schwartz-Tallard, 803 F.3d at 1099.

More importantly, the bankruptcy court in effect found that, if Locklin had not requested relief from the court in response to the letters, the potential chilling effect of the letters on the sale closing and on the distribution of the sale proceeds would have remained unremediated – at least until the escrow was later cancelled. We cannot say that the bankruptcy court's findings in this regard were clearly erroneous. Moreover, as the bankruptcy court's additional findings indicate, absent Locklin's stay violation motion, Reliance and Opperwall would have continued to have incentive to further interfere with other aspects of the administration of Locklin's bankruptcy estate in the hopes of leveraging a nuisance payoff from Locklin.

The bankruptcy court correctly found that, before filing the stay violation motion, Locklin's counsel should have attempted to rectify the stay violations by contacting Opperwall and demanding

13

that he and Reliance take action to terminate their stay violations and nullify their effect.  The bankruptcy court correctly took this finding into account in calculating what portion of Locklin's fees should be awarded as reasonable.  But this finding did not vitiate the stay violations or change the fact that Reliance and Opperwall disputed that the stay violations had occurred and thereby rendered it necessary for the bankruptcy court to render a stay violation ruling.  Furthermore, given the parties' litigation history and their respective positions on the stay violation issue, we agree with the bankruptcy court that any advance discussions between the parties on the stay violation issue likely would not have resolved the issue without court intervention.

It also is worth noting that Reliance and Opperwall never took any action in an attempt to remediate or limit the potential negative impact of their letters on Locklin's then-pending sale of her residence.  See In re Dyer, 322 F.3d at 1192 (holding that stay violators have an affirmative duty to remedy their stay violations).  Among other things, Reliance and Opperwall could have sent clarifying letters to Blesch and Watts disclaiming any interest in Locklin's property or the proceeds of Locklin's property.  Instead, Reliance and Opperwall disputed that the letters they sent violated the stay.  And, as the bankruptcy court put it, they disingenuously protested their innocent intent.  They claimed that they had not intended (1) to interfere with the court-approved sale, (2) to interfere with the court-approved distribution of the sale proceeds, or (3) to insinuate that Reliance had some sort of claim against Locklin or her

14

residence. The record supports the bankruptcy court's finding that this is precisely what Reliance and Opperwall intended.

In short, the bankruptcy court did not abuse its discretion when it awarded Locklin $7,033 in fees as actual damages arising from Reliance's and Opperwall's willful stay violations.

Reliance's and Opperwall's opening brief did not address the issue of whether the bankruptcy court erred in awarding punitive damages. Consequently, Reliance and Opperwall have forfeited this issue. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487-88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

On appeal, after this Panel set this matter for oral argument, Reliance and Opperwall filed a motion to continue oral argument. We denied that motion because Reliance's and Opperwall's motion did not explain why they had not followed the Panel's procedures for notifying the court of their unavailability for oral argument. Those procedures were set forth in the Panel's briefing order served on all of the parties. After we denied the continuance motion, Reliance and Opperwall filed additional papers attempting to persuade the Panel that oral argument should be taken off calendar. In support, Reliance and Opperwall also submitted a request for judicial notice seeking to have us consider documents beyond the scope of the record in this appeal and irrelevant to the issues on appeal and to our basis for denying their continuance motion. Nothing presented by Reliance and Opperwall persuades us that holding oral argument without their counsel being present was unfair, given their failure to follow the Panel's procedures. Therefore,

15

we reaffirm our denial of their requests for relief relating to oral argument, and we also hereby ORDER DENIED their request for judicial notice.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's stay violation order.