# United States Court of Appeals
## For the First Circuit

No. 14-2092

ELIZABETH TYREE,

Plaintiff, Appellant,

v.

ANTHONY FOXX,
SECRETARY, U.S. DEPARTMENT OF TRANSPORTATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

James A.W. Shaw, with whom Segal Roitman, LLP, was on brief, for appellant.
Christine J. Wichers, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

August 22, 2016

**TORRUELLA**, **Circuit Judge**.  Elizabeth Tyree was a paid graduate student intern at the John A. Volpe National Transportation System Center[1] ("Volpe Center").  During her internship, Tyree began conducting research for her master's thesis.  After her internship ended, she sought access to the Volpe Center's proprietary data through a Cooperative Research and Development Agreement ("CRADA") -- an agreement between a federal laboratory and a nonfederal entity to share resources and conduct research as defined in 15 U.S.C. § 3710a(d)(1)[2] -- to continue her thesis, but the CRADA was never executed.  Tyree brought this employment discrimination suit against the Secretary of Transportation alleging that the Volpe Center did not execute the CRADA because of her sex, race, or national origin.  The district

---

[1]  The Volpe Center is part of the Research and Innovative Technology Administration within the United States Department of Transportation.

[2]  Section 3710a(d) defines a CRADA as

> any agreement between one or more Federal laboratories and one or more non-Federal parties under which the Government, through its laboratories, provides personnel, services, facilities, equipment, intellectual property, or other resources with or without reimbursement (but not funds to non-Federal parties) and the non-Federal parties provide funds, personnel, services, facilities, equipment, intellectual property, or other resources toward the conduct of specified research or development efforts which are consistent with the missions of the laboratory [subject to certain exceptions].

court granted the Secretary's motion for summary judgment finding that Tyree failed to show the challenged acts were motived by discriminatory animus.  We affirm.

**I.**

The facts underlying this case are largely undisputed. "To the extent that the parties disagree about what occurred, we adhere to the plaintiff's version in keeping with our role in reviewing a grant of summary judgment." Ahmed v. Johnson, 752 F.3d 490, 492 (1st Cir. 2014).

During the relevant time period, Tyree, a black Hispanic woman, was a student at Worcester Polytechnic Institute ("WPI"), pursuing her master's degree in physics.  In February 2009, Tyree began a two-year paid internship with the Volpe Center.  Before accepting her offer and again after starting, Tyree told the Volpe Center she hoped to conduct research for her master's thesis. That spring, after viewing a list of research topics generated by the Volpe Center, Tyree decided to write her thesis on the differences between aircraft wake behavior over land and water. While working on her research, Tyree worked closely with Dr. Michael Geyer and Dr. Frank Wang at the Volpe Center as well as her thesis advisor at WPI.  Wang was the team lead for the aircraft wake turbulence program and one of the people involved in Tyree's interview process.  He worked closely with her for two years.

-3-

Tyree points to no evidence that he ever manifested, or even hinted at, any bias against her.

In January 2011, two weeks before her internship ended, the Volpe Center told Tyree that they would not extend her internship to full-time employment. Tyree asked Geyer if she would lose her thesis research. Geyer told Tyree that she could potentially continue her research (and have access to the Volpe Center's nonpublic wake data) through a CRADA between WPI and the Volpe Center.

The day before her internship ended, Tyree met with Geyer, Wang, and Felicia McBride, a Volpe Center attorney, to discuss the possibility of executing a CRADA. McBride, an African-American woman, explained to Tyree the CRADA process, including that Tyree needed to provide a statement of work ("SOW") describing her research before McBride could start writing a draft CRADA. McBride also explained that a CRADA is a mutually beneficial arrangement between a federal laboratory and a non-federal entity that must be approved by different departments within the agency, and would ultimately need approval from the Director of the Volpe Center and the administrator of the Research Innovation Technology Administration ("RITA") of the U.S. Department of Transportation. To do all of this, Tyree needed to have someone at Volpe work with her. There is no evidence that

Wang had any duty to help her at all. Nevertheless, he agreed to do so. After the meeting, Geyer instructed Tyree to write a first draft of the SOW and email it to Wang. Six days later, on February 16, Tyree emailed her draft SOW to Geyer and Wang.

The SOW, however, was never completed. In March, Wang emailed Tyree to let her know that she had received approval for one of the steps in setting up the CRADA but that he wanted to speak with her about "analysis ideas" he wanted to propose. At the beginning of April, Tyree went to the Volpe Center and Wang elaborated that he wanted Tyree to create a synthetic dataset to test a statistical method that would be subsequently used to analyze the wake data. In an email sent on April 28, Wang further explained that he believed the development of this "statistical tool" could be written into the SOW and he was concerned that the current SOW did not "have enough technology flowing back from WPI to [the] Volpe [Center]." Tyree, however, viewed Wang's suggestion as beyond the scope of her original thesis and a topic that would have merited a separate thesis in its own right.

Little work was done on the SOW between May and July of 2011. Starting in July, Tyree sent the Volpe Center several emails asking about the status of the SOW. Wang responded by telling Tyree that she should incorporate his suggestions about the statistical tool into the draft SOW in order to make the CRADA

more beneficial to the Volpe Center. McBride echoed this concern and stated that the SOW needed "to be 'sellable' in that it will align with a [Department of Transportation] goal." Tyree, however, wanted Wang to type his changes into the draft SOW himself and found it "suspicious" that, if he viewed the statistical tool as important, he had not proposed them when she started her research two years earlier. On July 17, Wang sent Tyree an edited SOW with his changes (including the statistical tool and synthetic dataset) incorporated.

Four days after receiving the edited SOW, Tyree spoke with her thesis advisor. Tyree's thesis advisor told her that, in his experience, SOWs (not necessarily for CRADAs) between two institutions took a few days to complete and up to a month if there were complications. That conversation cemented Tyree's belief that the Volpe Center had no intention of completing the SOW or executing the CRADA.

On August 10, 2011, Tyree sought equal employment opportunity ("EEO") counseling, alleging that the Volpe Center's delays in executing the CRADA were motivated by gender discrimination. Tyree requested $300,000 from the Volpe Center and someone other than Wang as her point of contact for the SOW and CRADA. The EEO counselor was unable to resolve Tyree's complaint and Tyree subsequently filed a complaint with the

-6-

Department of Transportation alleging sex, race, and national origin discrimination. Upon receiving a right to sue letter, Tyree initiated this suit in the United States District Court for the District of Massachusetts.

In her first complaint, Tyree alleged that by failing to execute the CRADA, the Secretary discriminated against her on the basis of her sex, race, or national origin in violation of Title VII, 42 U.S.C. § 2000e-16(a).[3] Tyree subsequently amended her complaint to include a claim that the Volpe Center's advice on her thesis following her internship constituted a post-employment training program at the Volpe Center from which she was wrongfully terminated due to her sex, race, or national origin when the CRADA negotiations fell through. Following discovery, the district court granted summary judgment on the CRADA and training program claims.[4] This timely appeal followed.

---

[3] Tyree also alleged wrongful termination and retaliation, which the district court dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Because these claims involved separate legal issues, we reject Tyree's argument that she appealed them by virtue of their being intertwined with her CRADA claim. The district court dismissed Tyree's wrongful termination claim for failure to exhaust administrative remedies and her retaliation claim, which was based on Geyer not writing her a letter of recommendation after seeking EEO counseling, for lack of causation.

[4] The district court found that the claims were susceptible to the same analysis. Additionally, Tyree does not separately brief these claims. We agree with the district court and our analysis applies to both claims.

"We review a district court's grant of summary judgment _de novo_, viewing the facts in the light most favorable to the non-moving party." _Román_ v. _Potter_, 604 F.3d 34, 38 (1st Cir. 2010). "Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." _Hicks_ v. _Johnson_, 755 F.3d 738, 743 (1st Cir. 2014).

When a Title VII discrimination claim rests on circumstantial evidence, we apply the three-step burden-shifting framework outlined by the Supreme Court in _McDonnell Douglas Corp._ v. _Green_, 411 U.S. 792 (1973). _Ahmed_, 452 F.3d at 495. Under step one of that framework, the plaintiff must establish a prima facie case of discrimination. _Id._ at 495-96. Once the plaintiff establishes a prima facie case, "an inference of discrimination arises, and the burden of production shifts to the defendant to produce evidence that the challenged employment action was taken for a legitimate, non-discriminatory reason." _Hicks_, 755 F.3d at 744. "If the employer supplies such evidence, the plaintiff is left with the burden to prove 'by a preponderance of the evidence that the employer's proffered reason is pretextual and that the actual reason for the adverse employment action is

discriminatory.'"  Id. (quoting Johnson v. Univ. of P.R., 714 F.3d 48, 53 (1st Cir. 2013)).

## A.  Prima facie case

At step one, the district court assumed that Tyree met her burden of proving a prima facie case of discrimination in connection with the Volpe Center's failure to execute the CRADA. We do the same.[5]

## B.  Non-discriminatory reason

Proceeding to step two, the district court concluded that the Secretary had articulated a legitimate non-discriminatory reason for failing to execute the CRADA -- namely, that Volpe Center personnel needed to make Tyree's proposed SOW more "sellable" to the higher-level officials (in particular, the Volpe Center director and RITA administrator) who needed to approve it. Specifically, the district court cited an email from Wang to Tyree stating that the "true spirit" of the CRADA was "sharing resources and analysis efforts" and it was important for him to be able to "'sell [the SOW]' in terms of 'what does Volpe really get out of the CRADA?'"  We note McBride echoed this concern and we agree

---

[5]  In doing so, we decline to address the Secretary's two alternative bases for affirmance: that the CRADA and training program were educational benefits beyond Title VII's protection and that Tyree's theory of relief was too speculative to constitute an adverse employment action.

-9-

with the district court that this was a legitimate non-discriminatory reason for why the Volpe Center never executed the CRADA.

Tyree argues, for the first time on appeal, that the Secretary never identified a legitimate non-discriminatory reason in his motion for summary judgment and the district court improperly articulated a reason on his behalf. Rather than grappling with what constitutes "extraordinary" circumstances allowing us to relax our "raise or waive" rule, see, e.g., Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 455 (1st Cir. 2016); Nat'l Ass'n of Soc. Workers v. Hardwood, 69 F.3d 622, 628-29 (1st Cir. 1995), we reject Tyree's argument outright. The "sellable" rationale cited by the district court is articulated in both the Secretary's motion for summary judgment and brief on appeal. We acknowledge that the Secretary's primary argument is that the CRADA fell through because Tyree ended the negotiations by filing her EEO complaint, but the Secretary also makes clear that Wang resisted Tyree's proposed SOW and intended to make it more "sellable to the Volpe Center" through his proposed changes.[6] Our

---

[6] Because we can affirm using the rationale understood by the district court, we decline to analyze the merits of the Secretary's preferred rationale for why the CRADA was never executed. In other words, we do not decide whether Tyree needed to continue negotiating the CRADA while she sought EEO counseling.

analysis thus turns to whether the Volpe Center's claim that Tyree's SOW needed to be more sellable was pretext for discrimination.

## C. Discriminatory intent

"At the summary judgment stage, the plaintiff 'must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination.'" Quiñones v. Buick, 436 F.3d 284, 289-90 (1st Cir. 2006) (quoting Thomas v. Eastman Kodak Co., 183 F.3d 38, 62 (1st Cir. 1999)). At this stage, "it is insufficient for a plaintiff merely to undermine the veracity of the employer's proffered justification." Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998). "[I]nstead, she must muster proof that enables a factfinder rationally to conclude that the stated reason behind the adverse employment decision is not only a sham, but a sham intended to cover up the proscribed type of discrimination." Id. Nonetheless, this court does not always require the plaintiff to adduce direct evidence of an employer's discriminatory animus. "When the prima facie case is very strong and disbelief of the proffered reason provides cause to believe that the employer was motivated by a discriminatory purpose, proof of pretext 'may' be

sufficient." Lattimore v. Polaroid Corp., 99 F.3d 456, 466 (1st Cir. 1996).

It is this latter scenario into which Tyree contends her case falls. Tyree's discriminatory intent argument rests on the Volpe Center's proffered reason being pretextual. In particular, she argues that because the Volpe Center originally approved of her thesis topic and Wang had not brought up his concerns about its statistical rigor earlier, her original SOW must have contained sufficient benefits to the Volpe Center to be worthy of a CRADA.

As a threshold matter, we do not view the Volpe Center's actions as inconsistent. Tyree ultimately did not receive a CRADA because she and Wang reached an impasse over what would be an acceptable SOW. But even if we assume Wang (or other Volpe Center personnel) was stonewalling, Tyree's prima facie case is not so strong that she could prevail on pretext alone. At best, Tyree has described a scenario in which she and her employer disagreed about the scope of her research. Her description of the nature of this disagreement would not allow a reasonable fact-finder to conclude it stemmed from discriminatory animus. All Tyree cites to us is her feeling that Wang and Geyer were motivated by discriminatory animus.[7] As the district court observed, subjective

_____

[7] The district court noted four anecdotes Tyree provided during her deposition as evidence of discriminatory animus. These anecdotes, consisting of male non-black or -Hispanic colleagues

-12-

belief of discrimination is not sufficient to withstand summary judgment. See Román, 604 F.3d at 40. Without further evidence, "[s]ubmitting the issue of discriminatory intent to a jury on this record would amount to nothing more than an invitation to speculate." Lattimore, 99 F.3d at 467-68. We therefore conclude that summary judgment was proper.

### III.

Our colleague's dissent argues that Tyree's Title VII claim was unable to withstand summary judgment because her discovery was unduly cut short. Specifically, the dissent focuses on Tyree's Interrogatory No. 3, which requested that the Volpe Center provide a list of all of its agreements that also involved producing a SOW and, for each agreement, the amount of time the SOW took to complete. In response, the Volpe Center provided Tyree with information regarding CRADA-related SOWs only, viewing other SOWs as irrelevant.

Tyree filed a motion to compel, which the district court denied on the grounds that Tyree's requests were overbroad and lacked relevancy to her claims. Tyree served a second set of

---

receiving more favorable performance reviews and a sexist remark made by a Volpe Center employee who had no role in the SOW or CRADA, were rejected by the district court. We do not consider this evidence given that Tyree did not mention it on appeal in any of her briefs or at oral argument.

interrogatories on the Volpe Center which reiterated her request for information about the timelines for other SOWs. Volpe Center objected to these interrogatories and Tyree subsequently filed a second motion to compel which argued that the Volpe Center's objections were untimely and that non-CRADA SOWs were relevant to her claims. The district court denied Tyree's motion.

We review a district court's discovery orders for abuse of discretion. Cascade Yarns, Inc. v. Knitting Fever, Inc., 755 F.3d 55, 59 (1st Cir. 2014). "Under that standard, we may reverse a district court only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Id. (internal quotation marks omitted) (quoting In re Subpoena to Witzel, 531 F.3d 113, 117 (1st Cir. 2008)).

We cannot say that Tyree met this standard. The theory of relevance advanced in our colleague's dissent is that if other SOWs were prepared more quickly, a factfinder could infer that the longer time here evidenced discrimination. This theory of relevance seems both a stretch, and likely to involve, if pursued, sideshow examinations of differences between the different SOWs, who did them, complexities, etc. In any event, the Volpe Center agreed to produce the requested SOWs that would on their face be most relevant: those produced in pursuit of a CRADA. Tyree offers

-14-

no argument or evidence that examinations of those most facially comparable SOWs provided any suppo1t for her claim. Discovery involves drawing lines, especially when targeted at logical inferences several times removed from the dispositive issue at hand. In drawing the line where it did, the district court certainly did not abuse its discretion.

As for the district court's summary decision not to deem the Volpe Center's discovery objections waived in the face of competing claims about when service occurred, such housekeeping attendance to managerial time limits are routinely made day-in and day-out in our trial courts, and we can find no precedent for reversing such a decision in this context as somehow being an abuse of discretion, especially where the parties' dispute about the timing of discovery service implicated no prejudice to Tyree even if objections were delayed.

Finally, although Tyree's pro se brief baldly asserts error in the discovery ruling, it offers no argument at all for why the line drawn between CRADA SOWs and non-CRADA SOWs was unreasonable. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). We therefore make no claim that appointed counsel dropped a presented argument. Rather, we observe only

that appointed counsel (likely cognizant of the trial court's wide discretion) developed no argument even when aware that Tyree was also not doing so. We do make allowances for pro se parties, in this instance going so far as to secure very capable representation. No rule or sense requires that we go further and sign on ourselves as her counsel.

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

**<u>Affirmed</u>**.

**"Dissenting opinion follows"**

**THOMPSON**, **Circuit Judge**, **dissenting**.  While it is true that the record, as is, fails to demonstrate discriminatory animus, Tyree cannot be expected to prove that which she was not properly afforded an opportunity to ascertain during discovery.  The majority dismisses Tyree's claim that she was wrongly denied a fair opportunity to discover crucial evidence (namely, information regarding how quickly the Volpe Center responded to other SOWs).  Because I agree with Tyree that the district court erred in denying her pro se discovery requests, and therefore incorrectly denied her the opportunity to discover the very evidence she needed to survive the Volpe Center's motion for summary judgment, I respectfully dissent.

## I. A Recap

During discovery, Tyree filed two sets of interrogatories, both of which requested information regarding other SOWs approved by the Volpe Center.  Tyree specifically sought information regarding the customer type or collaborators involved in the creation of each SOW and the amount of time it took to complete the SOWs and enter into the resulting agreements.[8]

---

[8]  Tyree's First Set of Interrogatories specifically sought:

> . . . a list, describ[ing] with great detail and specificity all of the agreements the Volpe Center has accepted and approved from January 1st, 2007 to July 1st, 2013, that either contained a statement of work or required a reference to a statement of work

In response to Tyree's discovery requests, the Volpe Center provided information regarding CRADA-related SOWs only, which it argued were the only type of SOWs relevant to Tyree's case.

Thwarted in her attempts to uncover this and other information, Tyree filed a motion to compel the First Set of Interrogatories, requesting, among other things, that the district court require the Volpe Center to provide the requested information regarding all SOWs. The district court denied this first motion, finding the interrogatories sought irrelevant.

Undeterred, Tyree filed a second motion to compel, seeking solely information regarding other SOWs approved by the

_____

or required a reference to a statement of work (sow) in the agreement. For each agreement include the following in the description:

a) the agreement type,

b) the customer type or vendor type,

c) the RVT number(s) associated with the agreement,

d) the frequency of contact between the Volpe Center's Point of Contact (POC) or a representative and the customer/vendor (POC) or any of their representatives,

e) the duration of time it took each agreement to be turnaround/approved form initial contact concerning the agreement to the date it was finalized and signed,

f) the date of initial contact concerning the agreement,

g) the date the agreement was finalized and signed.

-18-

Volpe Center. In this second motion, she argued that the Volpe Center's usual treatment of SOWs, whether CRADA-related or otherwise, was directly relevant to her claim that the Volpe Center had improperly delayed her SOW for discriminatory reasons. She also argued that the Volpe Center had waived its objections to her Second Set of Interrogatories because its responses had been untimely. The district court denied Tyree's second motion to compel with a one-line docket entry sans explanation. Tyree appealed both denials, along with the court's later summary judgment ruling.

## II. Merits

As stated by the majority, we review discovery orders for abuse of discretion and may reverse upon a showing that the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party. See In re Subpoena to Witzel, 531 F.3d 113, 117 (1st Cir. 2008) (quoting Saldaña-Sánchez v. López-Gerena, 256 F.3d 1, 8 (1st Cir. 2001)). Contrary to my colleagues, I think Tyree has met that standard here.

Although a district court typically has broad discretion in resolving discovery objections, "[s]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." Dean v. Barber, 951 F.2d 1210, 1213 (11th Cir. 1992) (quoting Snook v. Trust Co. of Ga., 859 F.2d 865,

-19-

870 (11th Cir. 1988)).  Tyree, who was pro se at the time she sought the discovery at issue, did not have an adequate opportunity for discovery in this case.

In her First and Second Interrogatory Requests, Tyree sought a list of all SOWs accepted and approved for any agreements entered into by the Volpe Center.[9]  Tyree specifically sought information regarding the "duration of time it took each Statement of Work to be completed," including "the date the Statement of Work was initiated" and "the customer type or vendor type or collaborators" involved in the creation of the SOWs.

Despite the district court's ruling to the contrary, these requests were clearly relevant to Tyree's claim that the Volpe Center delayed the process of creating her SOW in particular, and could have supported her claim that the Volpe Center discriminated against her in ultimately failing to enter the proposed CRADA.  In other words, if Tyree could have shown that in other similar agreements, the Volpe Center took significantly less time to produce SOWs and then swiftly entered into the resulting agreements, this could have served as circumstantial

---

[9]  Tyree's First and Second Interrogatory Requests contain requests that are substantively similar, with her First Interrogatory seeking information including all of the "agreements" entered into by the Volpe Center which contained SOWs, and her Second Interrogatory seeking information regarding all "SOWs within agreements" entered into by the Volpe Center.

evidence that the delays in Tyree's case were unusual, and thus perhaps due to discriminatory animus. How the Volpe Center handled other SOWs therefore could have answered whether Tyree was treated disparately and, by extension, may have created a genuine issue of fact with respect to whether the Volpe Center's articulated reason for failing to enter into the CRADA with Tyree was a pretext for discrimination.

But because the district court denied Tyree's motions to compel, we have no idea what other SOWs were entered into by the Volpe Center, what their usual procedure was in creating the SOWs, the time that it took to create those SOWs and eventually enter into the resulting agreements, or with whom those SOWs were created -- all information that very well could have demonstrated disparate treatment potentially driven by discriminatory animus in Tyree's case.

The majority finds the link between non-CRADA and CRADA related SOWs to be so attenuated as to render non-CRADA SOWs irrelevant to Tyree's claims, maintaining that even if pursued such discovery would result in "sideshow examinations of differences between the different SOWs, who did them, complexities, etc." However, relevancy is not contingent on the avoidance of complexity or the parsing out of similarities and/or differences. To the contrary, "[i]n discovery, the parties are

given broad range to explore 'any matter, not privileged, which is relevant to the subject matter involved in the pending action' so that they may narrow and clarify the issues and obtain evidence or information leading to the discovery of evidence for future use in the trial."  See Anderson v. Cryovac, Inc., 805 F.2d 1, 12 (1st Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1)).  Discovery demands the very examination derided by the majority.

The information Tyree requested was thus clearly relevant, and the district judge's ruling as to both motions to compel was plainly wrong.  This also resulted in substantial prejudice, as Tyree was foreclosed from discovering the very information essential to withstand the Volpe Center's motion for summary judgment.

Moreover, the district judge's denial of Tyree's second motion to compel, without so much as a cursory explanation of her rationale was, in itself, an abuse of discretion.  See Howland v. Kilquist, 833 F.2d 639, 646 (7th Cir. 1987) (quoting Darden v. Illinois Bell Tel. Co., 797 F.2d 497, 502 (7th Cir. 1986)) ("[A] decision made in the absence of a basis is an abuse of discretion").  The majority's contention that the district court did not abuse its discretion in rejecting Tyree's argument that the Volpe Center waived its discovery objections ignores the issue at hand.  The issue is not the district court's rejection of

Tyree's waiver argument -- the issue is that the district court proffers no explanation of its rationale or the basis of its finding. That, I believe, was an abuse of discretion.

The majority lastly notes that Tyree's pro se briefs "baldly assert[] error in the discovery ruling" without offering any arguments for why non-CRADA related SOWs were necessary. My colleagues seek to dismiss Tyree's discovery claims because of their inartful development in her pro se briefs. But I disagree that we can so hastily dispose of her pro se arguments. While the majority is correct that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are [typically] deemed waived," United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), that simply is not the case here, where a pro se plaintiff clearly asserted her complaints to the best of her abilities and, as made apparent by the quality of her pro se briefs, did her best to develop arguments in support of her discovery claims.

Generously construing her arguments, as we are required to do for pro se litigants, see Wedeen v. Green River Power Sports, 14 F. App'x 6, 6-7 (1st Cir. 2001) (noting that "our judicial system zealously guards the attempts of pro se litigants on their own behalf") (citing Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997)), I think it is clear that Tyree sufficiently raised

-23-

her discovery claims and accompanied her claims with some effort at developed argumentation. Her briefing cannot be held to the same standards of trained counsel. See United States v. Dunbar, 553 F.3d 48, 63 n.4 (1st Cir. 2009) (holding that, although an argument was not stated "artfully," it was not waived where the brief identified the relevant facts and law).

Because I think the judge abused her discretion in denying Tyree access to relevant information during discovery, I respectfully dissent from the majority opinion. Plaintiffs "rarely possess 'smoking gun' evidence to prove their employers' discriminatory motivations," Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir. 2009) (quoting Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 218-19 (1st Cir. 2008)), and the reality remains that outright admissions of impermissible discriminatory animus are infrequent and hard to come by. See Hunt v. Cromartie, 526 U.S. 541, 553 (1999). Against this backdrop, the importance of adequate discovery is all the more vital, particularly for pro se plaintiffs. Thus, I think the proper course here would be to reverse both the judge's discovery rulings and her grant of summary judgment in favor of the Volpe Center, so that Tyree might properly conduct discovery.